Jayne v. Pike County Correctional Facility et al
Case 3:07-cv-01113-EMK-LQ   Document 1   Filed 06/21/2007   Page 1 of 12
Doc. 1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Dylan Stephen Jayne

(Enter above the full name of
plaintiff in this action)

v.

Pike County Correctional Facility
Craig A. Lowe Warden, Jonathan J. Romance
Asst. Warden, Robert E. McLaughlin Asst.
Warden, Keith Rozansky Classification

(Enter above the full name of
the defendant(s) in this action)

Linda Lastarza Programs, Ilene Doolittle
Programs, Michael Volpe jail psychologist
Martha Turnberg jail psychologist

CIVIL CASE NO: 3:CV-07-1113
(to be supplied by Clerk
of the District Court)

COMPLAINT

1. The plaintiff  Dylan Stephen Jayne pro se  a citizen of the County of  Pike  State of Pennsylvania, residing at  139 Millridge Drive Milford, Pennsylvania 18337  wishes to file a complaint under  42 U.S.C. 1983 denial of civil and Constitutional rights
(give Title No. etc.)

2. The defendant is  Pike County Correctional Facility, Craig A. Lowe Warden, Jonathan J. Romance Assistant Warden, Robert E. McLaughlin Assistant Warden, Keith Rozansky Classification, Linda Lastarza Programs Director, Ilene Doolittle Programs Coordinator, Michael Volpe Psychologist, Martha Turnberg Psychologist

3. STATEMENT OF CLAIM: (State below the facts of your case. If you have paper exhibits that give further information of your case, attach them to this completed form. Use as much space as you need. Attach extra sheet(s) if necessary)  Attached

3. (CONTINUED) _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

4. WHEREFORE, plaintiff prays that a. Assume jurisdiction over this action;

b. Plaintiff seeks reasonable costs of litigation including attorney's fees and expenses pursuant to 43 U.S.C. 1988;

c. Decalre that the Defendants conspired together to violate Plaintiff's rights;

d. Award nominal, compensatory, and punitive damages for the violation of plaintiff's civil and Constitutional rights;

e. Grant such other and further relief to which Plaintiff may be entitled, or as this Court deems necessary and proper.

_____
(Signature of Plaintiff)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Plaintiff                                                         No. Civil-

Dylan Stephen Jayne

v.

Defendants

Pike County Correctional Facility, Craig-
A. Lowe Warden, Jonathan J. Romance
Assistant Warden, Robert E. McLaughlin
Assistant Warden, Keith Rozansky Classification,
Linda Lastarza Programs Director, Ilene
Doolittle Programs Coordinator, Michael
Volpe Psychologist, Martha Turnberg Psychologist

Complaint

1. On February 06, 2004 Dylan Stephen Jayne was found on 6th and West John Street Milford, Pennsylvania laying unconscious by Doug Dahl a cameraman for the local TV 13 News.

2. Doug Dahl called the Milford Police Officer Harry Prey arrived on scene.

3. Harry Prey instructed Doug Dahl to get a blanket from the trunk of the Milford Police car.

4. Dylan Stephen Jayne allegedly got to his feet and pushed Officer Harry Prey.

5. Harry Prey called on his Police issued CB Radio for back up to a neighboring City.

6. Matamoras Police Officer Christopher Cook arrives on scene.

7. Dylan Stephen Jayne was charged with Aggravated assault, Resisting arrest, Two

1

counts of Terroristic Threats, Harassment, Disorderly Conduct and Public Drunkenness.

8. Due to a Blackout caused by Post Traumatic Stress Disorder Dylan Stephen Jayne does not remember what happened the early morning of February 06, 2004 when he awoke in the Hospital at on or about Five Thirty p.m. on February 06, 2004 and to this day of June 18, 2007.

9. Dylan Stephen Jayne released himself against medical advise given by Bon Secour Emergency Room for observation. Dylan Stephen Jayne thought he had blacked out from his Post Traumatic Stress Disorder and from drinking to much alcohol.

10. The male nurse undid the arm restraints and Dylan Stephen Jayne got dressed started to leave when met by the Police they said they have a warrant for Dylan Stephen Jayne's arrest and Dylan Stephen Jayne was taken to Port Jervis, New York Police Department put in a holding cell for an hour and arraigned in front of a Magistrate and sent to Orange County jail to wait for an extradition hearing. Without having a copy of the warrant of arrest and the charges brought against Dylan Stephen Jayne.

11. Dylan Stephen Jayne called the Orange county public defenders office and asked for counsel. The counsel told Dylan Stephen Jayne at the court house before the extradition hearing not to fight the extradition. Dylan Stephen Jayne took that advise from Dylan Stephen Jayne's public defender and did not fight the extradition to Milford, Pennsylvania.

12. Milford Police Officers Dasilva and Harry Prey transported Dylan Stephen Jayne Officer Harry Prey gave Dylan Stephen Jayne a copy of the charges approved by

the District Magistrate Charles F. Liebermann.

13. Transportation was done on February 17, 2004 from Orange County Jail in Goshen, New York to 60-3-01 District Magistrate Charles F. Liebermann's office for Preliminary Hearing in Milford, Pennsylvania.

14. Dylan Stephen Jayne told Public Defender Andrew Hood that he does not know why he is charged with these crimes, he is disabled and that while Dylan Stephen Jayne lay face down on the ground in handcuffs behind his back Officer Cook from a standing position jumped in the air toward Dylan Stephen Jayne with his arm extended and slam pushed his right side of face into the ground. While Dylan Stephen Jayne is getting his face pushed into the street in hand cuffs for Four seconds screaming HELP he blacks out.

15. Dylan Stephen Jayne and/or Andrew Hood did not cross examine Doug Dahl, Christopher Cook and or Harry Prey. The only three to testify at the Preliminary Hearing.

16. Dylan Stephen Jayne was held accountable for all charges and bail was set for $7,500.00 straight bail.

17. Dylan Stephen Jayne was not sent a notice of Preliminary Arraignment scheduled for February 25, 2004.

18. Dylan Stephen Jayne did not attend the Preliminary Arraignment.

19. There was not a continuance of the Preliminary Arraignment.

20. The charges were transferred to the Court of Common Pleas in Pike County and Dylan Stephen Jayne's bail was reduced to $0.00.

Milford, Pennsylvania.

21. Dylan Stephen Jayne's public defender Andrew Hood told Dylan Stephen Jayne at Arraignment to sign a plea agreement to Resisting arrest and Public Drunkenness.

22. Dylan Stephen Jayne signed the guilty-plea colloquy agreement for Resisting arrest and Public Drunkenness initialed what had to be initialed except the part to be initialed saying if the defendant of the Commonwealth of Pennsylvania understood the charges against him/her.

23. On June 24, 2004 Dylan Stephen Jayne was sentenced to a total of Five months to Twenty Three and One Half months in Pike County Correctional Facility.

24. Dylan Stephen Jayne was classified on every general population unit in the jail and was never called to the sergeants and lieutenants office for causing a problem with anyone. He was moved without being told and he did not file a grievance. The last unit before maximum status he shared a cell with Paul Weakly an accused double murderer, body burning, over ten stolen illegal firearms in home while on parole, corpse abuser, crack cocaine possessor and probably to an even greater extent of criminal charges.

25. On July 15, 2004 Dylan Stephen Jayne arrived at the Jail from his parole hearing and placed in the intake area of the jail in Pike County Pennsylvania for observation as a Maximum Status Classification inmate for approximately Two months and moved to the Disciplinary Unit under the same classification of Maximum Status for approximately One and One Half months and moved to a then just created Unit for Maximum and protective custody Status inmates.

26. On July 15, 2004 Dylan Stephen Jayne had Eight days remaining to file an appeal.

27. Michael Volpe a Psychiatrist that works at the jail for Prime Care Medical repeatedly asked Dylan Stephen Jayne if he was suicidal Dylan Stephen Jayne at first would not answer that question Michael Volpe and Martha Turnberg once a week tried to convince Dylan Stephen Jayne that he needs to take a pill they wanted him to use to stop

racing thoughts that Michael Volpe said Dylan Stephen Jayne told him that DylanStephen Jayne has and to help him sleep.

28. Dylan Stephen Jayne asked every one he saw if he could use the law library and they eventually started to tell Dylan Stephen Jayne that if he took the medicine he could be reclassified by Michael Volpe, Martha Turnberg and Keith Rozansky so he could then use legal materials.

29. Nurse Denise under the direction of Martha Turnberg gave Dylan Stephen Jayne a medicine she said was for his high blood pressure in the morning while on the Disciplinary Unit as Maximum status for bizarre behavior the medicine made him dizzy and he knew it was not high blood pressure medicine. The Lopressor he takes was not effective enough for treatment of his high blood pressure.

30. Dylan Stephen Jayne was not given access to the Law Library materials to look at himself and was told by Craig A. Lowe, Jonathan J. Romance, Robert E. McLaughlin, Linda Lastarza and Keith Rozansky that he must write a request to the inmate law librarian to look up things for Dylan Stephen Jayne.

31. There is not one appeal a criminal defendant against the Court of Common Pleas in Pennsylvania can bring if given bad advise by an inmate law librarian.

32. In February of 2004 Dylan Stephen Jayne choked on a roasted potato wedge and ever since then he has had minor trouble swallowing food once every couple weeks so he tells Michael Volpe on the segregated housing Unit that he has some anxiety and if he could be evaluated for that and if necessary given a pill to help him with his anxiety.

33. Dylan Stephen Jayne was denied classification several times by Keith Rozansky responsible for the classification of all inmates while Dylan Stephen Jayne was taking

the medicine prescribed to him by Michael Volpe and Martha Turnberg and left his job up to Psychiatrists Michael Volpe and Martha Turnberg to determine when Dylan Stephen Jayne is ready for reclassification.

34. Dylan Stephen Jayne told Michael Volpe and Martha Turnberg he had trouble concentrating, hears voices, is paranoid, has hallucinations and did not know what kind of other side effects the Seroquil and Risperdol have when asked by Michael Volpe or Martha Turnberg and they would not tell what if any other side effects that might arise.

35. Dylan Stephen Jayne asked every one he thought might know what he did specifically to be placed on maximum status for approximately Eleven and one half months.

36. Dylan Stephen Jayne was maximum status for eating One meal without a utensil and did not get a verbal write up.

37. Dylan Stephen Jayne had only one verbal write up before maximum status for telling a unit officer to shut up while laying in his bunk during the day when the officer was in the cell next door searching.

38. Dylan Stephen Jayne requested a Post Conviction Collateral Relief from the inmate law librarian and there was not any available. An inmate from another jail in Pike county jail for a new trial said he would bring one from the state correctional facility on his next visit and did his last name was Gibbs he was convicted of killing a Hemlock Farms security guard in 1982 in Lords Valley Pennsylvania.

39. The Pike county staff at the Pike County Correctional Facility do not give legal advise or help with any of your legal proceedings.

40. The inmate law librarian is the most trusted inmate in the jail that is employed.

41. Dylan Stephen Jayne wrote a request to Ilene Doolittle for legal copies he could not give the only copy to an employee of the jail because they would throw it away he told Ilene Doolittle at his cell for the second time.

42. When Dylan Stephen Jayne wanted some original court documents copied he had to send them out of the jail by United Sates Postal service regular mail to a family member for copying.

43. Programs coordinator Ilene Doolittle refused to print one from the internet or make certain the library had at least one of any type of action that could be commenced by Dylan Stephen Jayne.

44. Dylan Stephen Jayne's Post Conviction Collateral Relief for ineffective counsel was Dismissed by the Court of Common Pleas in Milford, Pennsylvania on April 15, 2005 he had no access to law materials to file an appeal.

45. Dylan Stephen Jayne was reclassified on or about June 23, 2005 while on the prescribed medicine Seroquil and Risperdol one day before the expiration of the statute of limitations to file a Post Conviction Collateral Relief.

46. Dylan Stephen Jayne was released from jail on February 01, 2006.

47. On August 04, 2006 Informa Pauperis and pro se motion against Matamoras police department was approved no complaint filed.

48. Dylan Stephen Jayne served Blue Ridge communications a subpoena to produce documents for the News recording of his arrest on February 06, 2004. They responded with an application for a copy of broadcast that cost $30.00 for copying the tape.

49. On September 22, 2006 Dylan Stephen Jayne got the tape in the mail and watched

7

it to discover the tape shows Milford Police Officer Harry Prey throwing Dylan Stephen Jayne to the street when Matamoras Police Officer Christopher Cook is trying to handcuff Dylan Stephen Jayne as he is bent over the trunk of the Milford Police car that is when Officer Christopher Cook puts his hand on the back left corner of Dylan Stephen Jayne's head and guides it to the street with such speed that Officer Harry Prey looses his grip on bringing Dylan Stephen Jayne down to the street and Officer Christopher Cook slams Dylan Stephen Jayne's head into the street without letting go scene on the video by witness Doug Dahl employed by TV 13 News Milford, Pennsylvania.

50. Dylan Stephen Jayne had a claim of ineffective counsel and the Defendants denied him his 5th amendment to not be deprived of life, liberty or property his 8th amendment nor cruel and unusual punishment inflicted.

51. Psychiatrist Gwellyn Synes works for the RedCo group in Milford, Pennsylvania. When Dylan Stephen Jayne went to see Gwellyn Synes for a follow up for the medicine he is suppose to take Gwellyn Synes took Dylan Stephen Jayne off the medicine originally prescribed by Michael Volpe and Martha Turnberg. Dylan Stephen Jayne does not have Bi Polar disorder which the medicine prescribed to him is specifically is used to treat. Gwellyn Synes saw Dylan Stephen Jayne on April 24, 2007 for the first time under his new contract with RedCo in Milford, Pennsylvania.

52. Dylan Stephen Jayne could have filed a habeas corpus appeal if given access to law materials from the jail library such as habeas corpus appeal form, case law from the lexis nexus computer database, reasons the court grant a habeas corpus appeal, definition of a habeas corpus appeal, informa pauper is form, knowledge of how to get every page of

the criminal court proceeding from the court and from Andrew Hood esquire , Pamela Wilson esquire and Brandon Reish esquire public defenders that were appointed as counsel for Dylan Stephen Jayne's criminal case and Post Conviction Collateral Releif ineffective counsel appeal.

53. Dylan Stephen Jayne was represented by one public defender at a time for being charged with the commission of various crimes.

54. Dylan Stephen Jayne demands a jury trial.

55. Cruel and unusual punishment was inflicted on Dylan Stephen Jayne by the defendants by way of them not privately informing him of why his unit classification was being changed repeatedly. Dylan Stephen Jayne could not know why he was being moved to other units periodically so if he did something the defendants don't agree with they could tell Michael Volpe and Martha Turnberg that he needs to be seen by them. Dylan Stephen Jayne did not request to speak to the psychologist when seen in intake under maximum status and refused to speak to the psychologists.

56. Dylan Stephen Jayne was put on a suicide watch.

57. Dylan Stephen Jayne asked repeatedly and wrote requests for the Blooming Grove State Police address and to call them and to speak to them.

58. Dylan Stephen Jayne was denied his request for the Blooming Grove State Police address.

59. Dylan Stephen Jayne resides at 139 Millridge Drive Milford, Pennsylvania 18337 date of birth is November 20, 1982 at Morristown memorial hospital in Morristown, New Jersey.

60. Dylan Stephen Jayne was approved to receive a monthly check for having a mood

disorder named Post Traumatic Stress disorder from social security retroactively paid from April 01, 2002 in the summer months of the year 2002. When committed to the Pike County Correctional Facility on February 17, 2004 he reported being on social security to the intake officer.

61. Dylan Stephen Jayne could have filed with the Supreme Court a writ of certiorari appeal if he was given access to the law library.

62. Dylan Stephen Jayne's 14th amendment was violated.

63. Dylan Stephen Jayne seeks monetary reef exceeding $1,000,000.00 to the near equivalent of $2,000.00 a day form July 15, 2004 to February 01, 2006.

64. The suit is being filed under the Title 42 U.S.C. 1983 of the denial of civil rights by the defendants.

By: *[signature]*
Dylan Stephen Jayne
Plaintiff, pro se